# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 9, 2005          Decided June 3, 2005

No. 03-3088

UNITED STATES OF AMERICA,
APPELLEE

v.

CLIFTON M. PRICE,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 02cr00429-01)

———

*Beverly G. Dyer*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A.J. Kramer*, Federal Public Defender. *Neil H. Jaffee* and *Tony W. Miles*, Assistant Federal Public Defenders, entered appearances.

*John P. Gidez*, Assistant U.S. Attorney, argued the cause for appellee. With him on the briefs were *Kenneth L. Wainstein*, U.S. Attorney, and *John R. Fisher* and *Elizabeth Trosman*, Assistant U.S. Attorneys.

Before: EDWARDS, HENDERSON, and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* EDWARDS.

Opinion concurring in part filed by *Circuit Judge* HENDERSON.

EDWARDS, *Circuit Judge*: Defendant-appellant Clifton Price entered a conditional guilty plea to possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (2000). On appeal, Price challenges the District Court's denial of his motion to suppress evidence, including the gun found on his person, which he argues was obtained in violation of his Fourth Amendment right to be free from unreasonable searches and seizures. In addition, Price raises several challenges to his sentence.

We affirm the District Court's denial of Price's suppression motion. A police officer recovered the evidence in question as a result of a frisk, which was justified by the officer's reasonable fear that Price was armed and dangerous. Because the frisk did not violate the Fourth Amendment, the District Court did not err in denying Price's suppression motion.

Applying the reasonableness standard set forth by the Supreme Court in *United States v. Booker*, 125 S. Ct. 738, 765-67 (2005), we conclude that the sentence imposed by the District Court cannot withstand review. We therefore vacate and remand the District Court's sentencing decision. On remand, the District Court will be required to resentence Price pursuant to the commands of *Booker*.

## I. BACKGROUND

The following facts are drawn from testimony given at Price's suppression hearing by Kyle Fulmer, a Special Agent with the Safe Streets Task Force unit of the Washington Field Office of the Federal Bureau of Investigation ("FBI"). Price has not contested these facts.

On September 20, 2002, Fulmer was contacted by an "extremely reliable informant" who told him that a man already known to Fulmer as "Julio" was driving a silver Cadillac at the 3200 block of 8th Street in Southeast Washington, D.C. *See* Tr. of Mots. Hr'g of 1/28/03 at 6, 10, *reprinted in* Appendix of Appellant ("App."). The informant relayed the tag number of the vehicle and he also told Fulmer that "Julio" possessed at least a quarter pound of marijuana in the car. *See id.* at 6-8. Fulmer told the informant to keep an eye on the vehicle and to contact him if the vehicle began to move. *Id.* at 8.

Fulmer then contacted Special Agent Kevin Ashby, indicating that he needed some assistance in possibly stopping a vehicle. *Id.* at 9. Fulmer began to drive toward 8th Street to locate the silver Cadillac. He contacted the informant again, who told him that "Julio" had begun driving the vehicle. *See id.* Fulmer located the silver Cadillac at the intersection of Alabama Avenue and Wheeler Road. *Id.* He was able to corroborate the vehicle's tag and he recognized the driver as the man he knew as "Julio." *See id.* at 10-11. Fulmer also soon observed that there was a passenger in the vehicle, later identified as the defendant Clifton Price. *See id.* at 11, 35.

Fulmer and Ashby, driving separate cars, began following the Cadillac. After some time, Ashby joined Fulmer in Fulmer's vehicle. *See id.* at 11-13. When the Cadillac pulled into an alley parallel to Wheeler Road, Fulmer activated his emergency lights and siren. He and Ashby, wearing FBI vests and displaying their badges, exited Fulmer's vehicle and began yelling verbal commands, identifying themselves as police officers and instructing the occupants of the Cadillac to raise their hands and place them outside the car windows. *See id.* at 13-15, 40-41. Price does not contest that the stop of the vehicle was lawful.

Fulmer and Ashby next began to approach the Cadillac. Fulmer testified:

> As I was approaching the passenger side, issuing the verbal commands, the passenger, who we later identified as the defendant, Mr. Price, was sticking his hands outside the window, and at that time as I was getting closer, he began to reach down to his waistband area with his left hand. . . .

*Id.* at 16. Fulmer believed that Price might be reaching for a weapon, causing Fulmer to fear for his safety. *See id.* at 18, 20.

As soon as Price moved his hands toward his waistband, Fulmer reiterated his verbal commands for Price to put his hands outside the window. *Id.* at 19. Price complied and Fulmer opened the car door and removed Price from the vehicle, placing him on the ground. Fulmer then rolled Price onto his side and frisked Price's left waistband and pocket area, where he found a small handgun. *See id.* at 19-21.

\* \* \* \* \*

On October 17, 2002, a federal grand jury indicted Price for violating 18 U.S.C. § 922(g)(1), which forbids persons who have been convicted of a crime punishable by a term of imprisonment exceeding one year "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." On November 26, 2002, at the first status conference regarding Price's case, defense counsel informed the District Court that Price wished to file a motion to suppress evidence obtained in connection with the frisk. Price's counsel made it clear, however, that his client would likely plead guilty if the suppression motion was denied. *See* Tr. of Status Conference of 11/26/02 at 3, *reprinted in* App. On January 28, 2003, the District Court held a hearing on Price's suppression motion. Following the hearing, the trial judge denied Price's motion in an oral ruling. Price's counsel then informed the District Court

that it was not necessary to set a trial date, because Price was likely to plead guilty. Tr. of 1/28/03 at 81-82.

On March 25, 2003, at another status hearing, the prosecutor informed the District Court that the parties were working out the final language of a conditional guilty plea, in which Price would plead guilty to the offense but reserve his right to appeal the District Court's denial of his suppression motion. *See* Tr. of Status Hr'g of 3/25/03 at 2, *reprinted in* App. One week later, Price indicated an interest in retaining a new attorney. *See* Tr. of Status Conference of 4/1/02 at 2-5, *reprinted in* App. Price subsequently agreed to proceed with his appointed counsel and he pleaded guilty on April 22, 2003, reserving the right to appeal the denial of his suppression motion. *See* Tr. of Status Call of 4/22/03 at 9-10, *reprinted in* App. It is undisputed that, as a result of Price's indication that he was likely to plead guilty and his ultimate guilty plea, the Government was spared the burdens of preparing for trial. *See* Recording of Oral Argument at 17:45-18:02.

On May 28, 2003, a United States probation officer prepared Price's Presentence Investigation Report ("PSR"). Using the 2001 version of the Sentencing Guidelines, the probation officer found that Price's total offense level was 18 and that his criminal history score was 8 and, thus, his criminal history category was IV. This offense level and criminal history category resulted in a sentencing range of 41-51 months. These calculations included a two-point reduction in Price's offense level under § 3E1.1(a) of the Guidelines, because Price accepted responsibility for his conduct. *See* U.S.S.G. § 3E1.1(a) (2001). However, the probation officer recommended denying an additional one-level reduction under § 3E1.1(b)(2). The additional reduction is available to defendants who qualify for the two-level reduction under § 3E1.1(a), if the defendant's offense level prior to this two-level reduction is 16 or greater and the defendant has given timely notice of an intent to plead

guilty so that the Government is spared the burden of preparing for trial and the district court may allocate its resources efficiently. *Id.* § 3E1.1(b)(2). In determining Price's criminal history score, the probation officer included two Maryland convictions that Price allegedly received in 1999 and 2000.

Price's counsel filed written objections to the PSR, arguing that Price was entitled to an additional one-level reduction in his offense level under § 3E1.1(b)(2) and that the PSR's use of the two alleged prior Maryland convictions to increase Price's criminal history score was erroneous. According to Price's counsel, under the proper calculations of Price's offense level and criminal history score, the applicable sentencing range was 30-37 months. *See* Letter from Tony W. Miles, Assistant Federal Public Defender, to United States Probation Officer of 6/5/03, *reprinted in* App. at 41, 41-42. The probation officer rejected both of these objections in a revised PSR. The only sources cited by the probation officer to support the existence of either of the alleged Maryland convictions were unspecified "documents" and "documentation" in the Maryland court system. The probation officer did not give any indication of the nature or reliability of these documents.

At a July 17, 2003 sentencing hearing before the District Court, Price's counsel again raised objections on the issues of the third-level reduction for acceptance of responsibility and the asserted improper use of two Maryland convictions in calculating Price's criminal history category. The District Court granted Price the two-level reduction for acceptance of responsibility under § 3E1.1(a), but the court rejected Price's argument that he was entitled to a third-level reduction under § 3E1.1(b)(2). The District Court did not find that Price's notification of his intention to plead guilty was untimely, that the Government expended any resources preparing for trial, or that the court was not able to allocate its resources efficiently. Instead, the District Court stated:

> It's a choice that [Price] has to make. He was not accepting responsibility if he was able to convince the court that he had been the victim of a constitutional violation. That's not a frank and candid acknowledgment of guilt.

Tr. of Sentencing Hr'g of 7/17/02 at 2-3, *reprinted in* App. With regard to the two Maryland convictions, Price's counsel argued that "we still have not been presented with evidence that we believe is sufficient enough to prove that the two prior convictions exist that we challenged." *Id.* at 7. The court responded: "I don't know what you need in the way of evidence. The Probation Officer has investigated and found – presumably has investigated and found that these are a matter of record among the Maryland court documents." *Id.* The District Court sentenced Price to 51 months' imprisonment, as well as three years of supervised release and a $100 special assessment. *Id.* at 12-13.

Because Price was sentenced in July 2003, more than a year before the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005), the District Court applied the Sentencing Guidelines as if they were mandatory. This was error under *Booker*. The Court in *Booker* "sever[ed] and excise[d]" two provisions of the Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 *et seq.*, 28 U.S.C. § 991 *et seq. Booker*, 125 S. Ct. at 764. These provisions are 18 U.S.C. § 3553(b)(1), which mandated judicial use of the Sentencing Guidelines, and section 3742(e), which "set[] forth standards of review on appeal." *Id.* The Court replaced section 3742(e) with "a practical standard of review already familiar to appellate courts: review for 'unreasonable[ness].'" *Id.* at 765 (quoting 18 U.S.C. §3742(e)(3) (1994)). The Court also instructed that its holdings should be applied "to all cases on direct review." *Id.* at 769.

Price challenges both the District Court's denial of his suppression motion and the length of his sentence. We affirm

in part, vacate in part, and remand the case for further proceedings.

## II. ANALYSIS

### A. *The Denial of Price's Suppression Motion*

Price argues that Special Agent Fulmer violated the Fourth Amendment's prohibition against unreasonable searches and seizures by forcing Price from the car and patting him down. The Government responds that a reasonable officer in Special Agent Fulmer's position would have been warranted in the belief that his safety was in danger, and therefore Fulmer's actions were justified under *Terry v. Ohio*, 392 U.S. 1 (1968). We agree with the Government.

As we have explained, "[i]n *Terry v. Ohio*, the Supreme Court held that a police officer needs neither probable cause nor a warrant to conduct a brief investigatory stop of an individual if [the officer] has a reasonable suspicion that 'criminal activity may be afoot.'" *United States v. Brown*, 334 F.3d 1161, 1164 (D.C. Cir. 2003) (quoting *Terry*, 392 U.S. at 30). Moreover, the officer "may conduct a protective search of the outer layers of the suspect's clothing if [the officer] has a 'reasonable fear' that the suspect is armed and dangerous." *Id.* (quoting *Terry*, 392 U.S. at 30).

> In reviewing such [protective] searches, we apply an objective test based on the facts available to the officer at the time of the search: "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." He must be able to point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."

*United States v. Mitchell*, 951 F.2d 1291, 1295-96 (D.C. Cir. 1991) (quoting *Terry*, 392 U.S. at 21, 27). We apply this standard *de novo* to determine whether an officer in Special Agent Fulmer's position reasonably would fear that Price was armed and dangerous, thus justifying a frisk of Price. *See Brown*, 334 F.3d at 1164 (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996)).

Price does not dispute the lawfulness of the stop of the vehicle in which he was a passenger. Therefore, the stop preceding the *Terry* frisk is not an issue. There are two factors in this case, which, taken together, demonstrate that an officer in Special Agent Fulmer's position reasonably would fear that Price was armed and dangerous. First, a reliable informant told Fulmer that the driver of the vehicle was transporting a stash of illicit drugs. Second, after Fulmer and Ashby approached the car and issued verbal commands to the vehicle's occupants to place their hands outside the windows, Price reached back inside the car toward his waistband.

We do not mean to suggest that a *Terry* frisk would have been justified absent the totality of these circumstances. On this record, however, we find that Agent Fulmer acted reasonably. Where a police officer conducts a lawful traffic stop and has been told by a reliable informant that the driver of the stopped vehicle is transporting a stash of illegal drugs, the officer has a reasonable fear that a passenger in the vehicle is armed and dangerous if that passenger disobeys the officer's command to keep his hands in plain view and instead reaches back toward his waistband in a motion that is consistent with an attempt to retrieve a weapon. *See United States v. Edmonds*, 240 F.3d 55, 60 (D.C. Cir. 2001) ("[E]ven though a single factor might not itself be sufficiently probative of wrongdoing to give rise to a reasonable suspicion [justifying a *Terry* stop], the combination of several factors – especially when viewed through the eyes of an experienced officer – may."); *see also id*. at 61-62

(recognizing that furtive gestures undertaken in response to police presence can serve as a factor in establishing reasonable suspicion). Therefore, the District Court properly denied Price's motion to suppress evidence.

## B. *Sentencing*

Price argues that the District Court also erred in its application of the Sentencing Guidelines to his case. Under *Booker*, we review the District Court's sentence to ensure that it is reasonable in light of the sentencing factors that Congress specified in 18 U.S.C. § 3553(a). *See Booker*, 125 S. Ct. at 765-67. As the Court explained in *Booker*: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." *Id.* at 766. These factors include, among others, the nature of the offense, the defendant's history, the need for the sentence to promote adequate deterrence and to provide the defendant with needed educational or vocational training, any pertinent policy statements issued by the Sentencing Commission, the need to avoid unwarranted sentencing disparities among similarly situated defendants, and the need to provide restitution to any victims. *See* 18 U.S.C. § 3553(a) (2000) (amended 2003).

In deciding whether a sentence is reasonable, we must also consider whether the District Court committed legal error. "[A] sentence would not be 'reasonable,' regardless of length, if legal errors, properly to be considered on appeal, led to its imposition." *United States v. Crosby*, 397 F.3d 103, 114 (2d Cir. 2005). A failure to follow the strictures of the Sentencing Guidelines is among the errors that might cause a sentence to be overturned on appeal. We do not mean to suggest that the District Court is required to adhere to the Sentencing Guidelines. Under *Booker*, the Guidelines are now *advisory*, *i.e.*, one among a number of factors to be weighed by the District Court in

sentencing. Rather, what we do hold here is that when the District Court purports to apply the Guidelines it must do so without error.

On the record in this case, we hold that the District Court committed error by: (1) denying Price's request for a third-level reduction for acceptance of responsibility when, under the plain language of the Guidelines, Price was entitled to such a reduction; and (2) including one of the two Maryland convictions in the calculation of Price's criminal history score, when Price clearly disputed that conviction and the Government did not sustain its burden of proof in establishing the conviction. Because we remand the case in light of errors made by the District Court in applying the Sentencing Guidelines, we need not decide whether a remand is required under *United States v. Coles*, 403 F.3d 764 (D.C. Cir. 2005) (per curiam) (setting forth principles governing the application of plain-error doctrine to appeals of pre-*Booker* sentences).

### 1. *Acceptance of Responsibility*

Under the Guidelines, Price was entitled to a third-level reduction in his offense level pursuant to U.S.S.G. § 3E1.1(b)(2) (2001) if he "timely notif[ied] authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently." Price clearly satisfied this standard here. In November 2002, at the very first status conference in this case, Price's counsel indicated that, if Price lost his motion to suppress, he was likely to plead guilty. Once Price's motion to suppress was denied, his counsel immediately informed the trial court that it was not necessary to set a trial date because a guilty plea was likely. And Price did indeed plead guilty in April 2003. Moreover, the Government does not dispute that, as a result of Price's timely notification of his intent to plead guilty, the Government was spared the burden of preparing for trial. *See* Recording of Oral Argument at 17:45-18:02 (statement of

Assistant United States Attorney that, while the Government does not believe that Price was entitled to a third-level reduction: "We're certainly not relying on any possible trial preparation by the Government. Indeed, we don't contend that the trial prosecutor in this case did anything more than perhaps mentally anticipate that he might have to go to trial."). And it is evident that the District Court was able to allocate its resources more efficiently, because the District Court never set a date for trial. Thus, applying the plain language of § 3E1.1(b)(2), we hold that Price was entitled to a third-point reduction in his offense level under the Guidelines.

The District Court reached a contrary result, apparently in the belief that a defendant who moves to suppress evidence cannot be eligible for a third-level reduction under § 3E1.1(b)(2). *See* Tr. of 7/17/03 at 2-3. The District Court's conclusion on this point cannot be reconciled with the plain language of § 3E1.1(b)(2), which states that a defendant is eligible for a third-level reduction if he timely notifies "authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing *for trial*." U.S.S.G. § 3E1.1(b)(2) (emphasis added). While the Government did have to prepare for a suppression hearing, the Government does not dispute that it never had to prepare for trial. Therefore, under the plain language of U.S.S.G. § 3E1.1(b)(2), Price was entitled to a third-level reduction in his offense level. *Accord, e.g., United States v. Marquez*, 337 F.3d 1203, 1212 (10th Cir. 2003) ("[W]e hold that where a defendant has filed a non-frivolous motion to suppress, and there is no evidence that the government engaged in preparation beyond that which was required for the motion, a district court may not rely on the fact that the defendant filed a motion to suppress . . . to justify a denial of the third level reduction under § 3E1.1(b)(2)."); *United States v. Kimple*, 27 F.3d 1409, 1414-15 (9th Cir. 1994) (in rejecting the Government's argument that a defendant was not entitled to a third-level reduction under

§ 3E1.1(b)(2), stating that the Government's mere opposition to "a suppression motion is not sufficient to constitute trial preparation"). *But see, e.g., United States v. Rogers*, 129 F.3d 76, 78, 80-81 (2d Cir. 1997) (per curiam) (taking a contrary view in a case in which the defendant offered to enter a conditional guilty plea after the district court denied her motion to suppress, and where the Government rejected the offer).

In its brief to this court, the Government suggests that Price should not be awarded a third-level reduction under § 3E1.1(b)(2), because the trial court briefly continued the case when Price expressed a desire for a new attorney. *See* Gov't Br. at 30. This argument is without merit. It is undisputed that the Government was spared the burden of preparing for trial, because Price timely notified authorities of his intention to plead guilty. Therefore, any brief delay caused by Price's short-lived desire to obtain new counsel clearly did not require prosecutors to expend resources for trial, and thus it provides no basis under the plain language of § 3E1.1(b)(2) to deny Price's request for an additional one-level reduction in his offense level. *See Marquez*, 337 F.3d at 1212.

### 2. *Prior Convictions*

Price also argues that the District Court erred in applying the Guidelines by enhancing his sentence based on two prior Maryland convictions, because the Government failed to satisfy its burden of proving the existence of those convictions. Price's objection is well taken with respect to one of the two convictions.

The Government does not dispute that it carries the burden of proving any facts that may be relevant in sentencing. We have held that the Government generally may satisfy this burden by relying on *undisputed* facts in a presentence investigation report, so long as the facts of the report are not internally contradictory, wildly implausible, or inconsistent with evidence

from the trial. *See United States v. Pinnick*, 47 F.3d 434, 437 (D.C. Cir. 1995). However, the Government may not simply rely on assertions in a presentence report if those assertions are contested by the defendant. Thus, when the defendant calls into dispute a presentence report's description of an alleged prior conviction, the Government must demonstrate that the description in the report is based on a sufficiently reliable source to establish the accuracy of that description. *See United States v. Richardson*, 161 F.3d 728, 737-38 (D.C. Cir. 1998). This burden is triggered whenever a defendant disputes the factual assertions in the report. The defendant need not produce any evidence, for the Government carries the burden to prove the truth of the disputed assertion. *See Pinnick*, 47 F.3d at 437-38; *Richardson*, 161 F.3d at 737-38.

In this case, if, during the proceedings below, Price did in fact dispute the existence of the two Maryland convictions described in his PSR, it is evident that the Government failed to meet its burden of demonstrating that the PSR assertions were based on sufficiently reliable sources. The only sources cited by the probation officer to establish the existence of either conviction were "[d]ocumentation from the District Court for Prince George's County, Maryland" and "Court documents and criminal history information from the State of Maryland." As Price correctly points out, it is unclear what sort of "documents" the probation officer reviewed. This reference could be, for instance, to a docket listing, which would lack the necessary indicia of reliability for the Government to meet its burden under *Richardson*. *See* 161 F.3d at 738 (explaining that the District Court erred when its sentencing enhancement was based on the description of a prior conviction in a presentence report where "there was simply no way of knowing at sentencing whether [the] description was obtained from a legitimate and reliable source, such as a charging document, a plea agreement, or a previous presentence investigation report adopted by the state court . . . or whether this description came from an untested

source, such as an arrest warrant, a police report, or a prosecutor's proffer.").

Under *Pinnick*, however, it is clear that the Government's *Richardson* burden is triggered only when the defendant disputes the factual accuracy of the description of prior convictions in the presentence report. In this case, Price clearly contested the factual accuracy of one of the two convictions. Specifically, after the probation officer prepared Price's initial PSR, Price's counsel wrote a letter to the probation officer, which objected that "Mr. Price is not associated with Prince George's County, Maryland case number [number intentionally omitted]," a 1999 offense for attempting to elude the police. Letter from Miles to probation officer of 6/5/03, App. at 41. This statement plainly disputes the factual accuracy of the PSR with regard to the 1999 conviction. Therefore, the Government's burden under *Richardson* to prove the existence of that conviction through a reliable source was indeed triggered. And, because the Government failed to meet its burden, the District Court erred by enhancing Price's sentence based on that conviction.

However, with regard to the second disputed Maryland conviction, an alleged 2000 offense for possession of marijuana and a handgun, the record is unclear as to whether Price objected to the accuracy of the PSR's description. Therefore, we cannot say that the District committed legal error by enhancing Price's sentence based on this conviction.

### III. CONCLUSION

We affirm the District Court's denial of Price's suppression motion. We vacate the District Court's sentencing decision and remand the case for resentencing. On remand, the District Court will be required to start anew, under the legal regime established by *Booker*, which makes it clear that the Sentencing Guidelines are advisory.

KAREN LeCRAFT HENDERSON, *Circuit Judge*, concurring in part:

I join the majority opinion but write separately on two points. First, under the federal sentencing standards regime announced by the United States Supreme Court in *United States v. Booker*, 125 S. Ct. 738 (2005), and on the record in this case, I believe the sentencing court on remand can reasonably decline to consider awarding Price any credit for accepting responsibility and instead resentence him to the term of imprisonment we vacate today, if not a longer term. Second, I believe that the majority reads our decision in *United States v. Richardson*, 161 F.3d 728 (D.C. Cir. 1998), too broadly now that we have entered the post-Guidelines world.

Following *Booker*, a sentencing court is no longer "bound" to apply the Guidelines but must only "consult those Guidelines and take them into account when sentencing"; for our part, we now review a sentencing decision only for "unreasonableness." 125 S. Ct. at 767. These changes flow from the remedy portion of the *Booker* opinion, in which the Court severed two provisions of the Sentencing Reform Act of 1984 (SRA or Act), as amended, 18 U.S.C. §§ 3551 *et seq.*, 28 U.S.C. §§ 991 *et seq.* It first severed the provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), while concluding that the remainder of the Act " 'function[s] independently.' " *Booker*, 125 S. Ct. at 764-65 (quoting & citing *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987)) (alteration in *Booker*). It also excised the provision of the SRA that "sets forth standards of review on appeal," 18 U.S.C. § 3742(e), replacing it with "a practical standard of review already familiar to appellate courts: review for 'unreasonable[ness].' " *Booker*, 125 S. Ct. at 765 (quoting 18 U.S.C. § 3742(e)(3) (1994 ed.)) (alteration in *Booker*). With these two modifications, the Court explained, "[s]ection 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is

unreasonable." *Id.* at 766. The *Booker* decision applies "to all cases on direct review," including this one. *Id.* at 769.

The district court's duty to consult the Guidelines is, however, quite different from the previous duty to apply them mandatorily. Now, in setting a particular sentence, the district court must "take account of the Guidelines together with other sentencing goals." *Id*. at 764. This means that the district court *must* consider the criteria set forth in section 3553(a), including the Guidelines sentencing range established for "the applicable category of offense committed by the applicable category of defendant" as well as policy statements of the Sentencing Commission. 18 U.S.C. § 3553(a)(4)-(5); *see Booker*, 125 S. Ct. at 764. The district court must also continue, the Supreme Court tells us, "to impose sentences that reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and effectively provide the defendant with needed educational or vocational training and medical care." *Booker*, 125 S. Ct. at 765 (citing 18 U.S.C. § 3553(a)(2)). What the practical difference between the duty to consult the Guidelines and the duty to apply them means under the "reasonableness" standard of review will emerge only on a case-by-case basis. But it is clear that the duty to consult the Guidelines neither reduces them to "a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge," *United States v. Crosb*y, 397 F.3d 103, 113 (2d Cir. 2005), nor maintains *de facto* the mandatory sentencing regime declared unconstitutional in *Booker*, 125 S. Ct. at 750, 756, 767.

Under the new sentencing regime, and on this record, I believe it would be reasonable for the sentencing court on remand to decline to consider awarding Price any credit for accepting responsibility and to re-impose, if not increase, the sentence vacated herein. To say that Price is no stranger to the criminal justice system is an understatement. At the time of the offense on which he is to be resentenced, *i.e.*, felon in possession of a

3

firearm and ammunition, *see* 18 U.S.C. § 922(g)(1), he was on double-probation in the District of Columbia, where he has twice been convicted of crimes: one time for domestic violence, the other for possession with intent to distribute cocaine. *See* Appellee's Record Material at Tab 10, p.2. And if the government adequately establishes the information in the pre-sentence investigation report regarding the two Maryland offenses, the sentencing court can add those two offenses to his conviction tally. Up to now, Price's criminal life has been charmed; the sentencing authorities have imposed suspended sentences and probation for his four convictions. This plainly has served neither Price nor the community well. As the original sentencing court observed, Price "just does not seem to learn. He does not learn." Sentencing Tr. of 7/17/03 at 8; *see id.* at 10 ("If he[] were a novice I might feel differently but the fact that two other courts have given him a break and he didn't learn from those prior experiences does not encourage me to think that he is serious about changing his life style."). Given that Price's public criminal record reveals a man determined to burnish his criminal credentials and at society's expense—two factors appropriate for consideration on resentencing, *see* 18 U.S.C. § 3553(a)(1) & (2)(C)[1]—I believe the sentencing court could reasonably decline to lessen his punishment in any way, including by considering his alleged acceptance of responsibility.

As to the two Maryland convictions, I do not agree that, on remand, the government must "meet its burden under *Richardson*." Maj. Op. at 14. In *Richardson*, we held that, under the Guidelines, the sentencing court could not "turn to potentially unreliable second-hand information in designating a

---

[1] In determining Price's sentence on remand, the sentencing court must consider both "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), and "the need . . . to protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(C).

prior offense as a crime of violence." 161 F.3d at 738. We explained that the description of the defendant's prior conviction in the pre-sentence report failed to "reliably indicate the *precise crime* to which appellant pled guilty" because "there was simply no way of knowing at sentencing whether this description was obtained from a legitimate and reliable source, such as a charging document, a plea agreement, or a previous presentence investigation report adopted by the state court." *Id.* at 737-38 (emphasis added). The reason such pin-point accuracy was necessary, however, was that the prior conviction had to constitute a "crime of violence" in order to be used in computing the defendant's offense level. *Id.* at 737. But "offense levels," "adjustments," "departures" and all of the other Guidelines argot has been jettisoned by *Booker*. We now operate in a "back to the future" sentencing world when, pre-Guidelines, all that our Circuit required of the government in this regard was that it submit "some verification,"—that is, any "evidence of a sufficiently reliable caliber"—to support the information that it supplied the sentencing court and that the defendant challenged. *See United States v. Lemon*, 723 F.2d 922, 934, 942 (D.C. Cir. 1983); *United States v. Bass*, 535 F.2d 110, 121 (D.C. Cir. 1976). In my view, that is all that is required once again.