# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 22, 2009   Decided January 15, 2010

No. 08-3009

UNITED STATES OF AMERICA,
APPELLEE

v.

JEROME M. CARTER,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cr-00215-RBW-1)

*Beverly G. Dyer*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A. J. Kramer*, Federal Public Defender. *Tony W. Miles*, Assistant Federal Public Defender, entered an appearance.

*Ryan W. Bounds*, Assistant U.S. Attorney, argued the cause for appellee. On the brief were *Jeffrey A. Taylor*, U.S. Attorney at the time the brief was filed, and *Roy W. McLeese III*, *Elizabeth Trosman*, and *Ann K. Simon*, Assistant U.S. Attorneys.

Before: SENTELLE, *Chief Judge*, GRIFFITH and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Jerome Carter pled guilty to five counts of bank robbery and was sentenced to 150 months in prison. The length of his sentence was based, in part, on the district court's finding that his criminal history included four theft convictions in Maryland. On appeal, Carter challenges that finding because it was based solely on state court computer records that are, he argues, insufficient to prove prior convictions. We disagree and affirm the sentence.

**I.**

Over the span of six weeks in June and July 2007, Carter netted more than $17,000 in a string of bank robberies across Washington, D.C. The police arrested Carter on July 29, 2007. On October 5, he pled guilty to five counts of bank robbery in violation of 18 U.S.C. § 2113(a) (2006). In the Presentence Investigation Report (PSR), the United States Probation Office calculated a Sentencing Guidelines range of 120 to 150 months, based in part on Carter's criminal history. Using the Guidelines point system, the PSR assigned Carter a criminal history score of 18. Six of his 18 points came from four Maryland theft convictions. The PSR did not report the source of its information about the Maryland convictions.

In a presentence memorandum filed with the court, Carter objected to the PSR's calculation of his criminal history score, claiming there was insufficient evidence of the prior Maryland theft convictions. Carter argued the district court could not use a criminal history score that relied on these insufficiently substantiated prior convictions. Omitting the Maryland convictions, Carter maintained his criminal history

score was only 12, which, when combined with his total offense score, corresponds to a guideline range of 110 to 137 months.

At the sentencing hearing, the government produced Maryland state court records of the disputed convictions. App. at 46–62. The records were printouts of entries from the District Court of Maryland Criminal System Inquiry Charge/Disposition Display database. The database entries for each conviction include Carter's name, other identifying characteristics, the charge, the case number, the plea, the disposition, and the sentence. The Maryland court clerk's office certified each printout.[1]

In the face of these records, Carter continued his objection to the sufficiency of the evidence, arguing that the possibility of data-entry errors rendered the computer records inherently unreliable. He suggested the government needed to produce a copy of the "actual court jacket" for each proceeding to prove the prior convictions. Tr. 3. The district court offered to postpone the hearing to give Carter an opportunity to present contrary evidence. Carter declined. *Id.* at 5–6.

The district court rejected Carter's challenge, concluding the computer records were reliable evidence of the Maryland convictions. *Id.* at 6. The district court adopted the PSR's calculation of a criminal history score of 18 and its

---

[1] The government provided this documentation for not only the four theft convictions mentioned above, but also two other Maryland convictions against which Carter lodges the same sufficiency challenge. Because those two convictions were more than ten years old at the time of the instant offense, they did not count towards Carter's criminal history score or impact his guideline range. *See* U.S. SENTENCING GUIDELINES MANUAL § 4A1.2(e)(2) (2008) [hereinafter U.S.S.G.].

recommended guideline range of 120 to 150 months. The court then sentenced Carter to 150 months' imprisonment. Carter appeals that sentence. We have jurisdiction under 18 U.S.C. § 3742.

**II.**

Carter's appeal challenges the district court's factual conclusion that Carter was convicted of the four Maryland theft offenses used to enhance his criminal history score. We review the district court's factual findings at sentencing for clear error, *see In re Sealed Case*, 552 F.3d 841, 844 (D.C. Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)), which means that "we affirm unless we are 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Brockenborrugh*, 575 F.3d 726, 738 (D.C. Cir. 2009) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

When seeking a sentence enhancement, the government must prove a prior conviction by a preponderance of the evidence. *See In re Sealed Case*, 552 F.3d at 846. Carter argues the certified computer records the government proffered were insufficient to meet this burden because they are unreliable.

Evidence is competent to support factual findings at sentencing if it bears "sufficient indicia of reliability to support its probable accuracy." U.S. SENTENCING GUIDELINES MANUAL § 6A1.3 (2008) [hereinafter U.S.S.G.]. The certified records of a state court are presumptively reliable. *See* FED. R. EVID. 803(8) advisory committee's note (justifying the hearsay exception for public records on the basis of their inherent reliability). The presumed reliability of public records "is found in the declarant's official duty and the high probability that the duty to make an accurate report has been

performed." 2 MCCORMICK ON EVIDENCE § 295, at 328 (6th ed. 2006); *see Chesapeake & Del. Canal Co. v. United States*, 250 U.S. 123, 128–29 (1919) (explaining why public records are "unusually trustworthy sources of evidence"). Other courts have found similar certified state court records sufficiently reliable to support a finding of a prior conviction at sentencing. *See United States v. Zuniga-Chavez*, 464 F.3d 1199, 1203–04 (10th Cir. 2006); *United States v. Thompson*, 274 F. App'x 453, 455 (6th Cir. 2008); *see also United States v. Felix*, 561 F.3d 1036, 1042–43 (9th Cir. 2009) (holding an uncertified printout from a state court conviction database sufficiently reliable to support a finding of a prior conviction); *United States v. Cousin*, 219 F. App'x 190, 194 (3d Cir. 2007) (same); *United States v. Esparza-Varela*, 106 F. App'x 1, 4 (10th Cir. 2004) (same). Carter cites to no case holding certified records from a state court's disposition database insufficient to support a finding of a prior conviction by a preponderance of the evidence, and we are unaware of any.

Carter nevertheless argues these computer records cannot be reliable because there is no assurance that they conform to the official case files or signed judgments of conviction. Appellant's Br. at 5–7. We recognize the possibility of human error in data entry. But the mere possibility of error—the lynchpin of Carter's argument—does not warrant the conclusion that these records, maintained and certified by a state court, are inherently unreliable. *See Thompson*, 274 F. App'x at 455 (noting that the defendant's "unsubstantiated aspersions" do not discredit certified database records of a state court). Absent evidence of inaccuracy or unreliability, the Maryland state courts' certified computer records are sufficient to prove a prior conviction at sentencing. Accordingly, the district court did not clearly err in finding that Carter's criminal history included the prior Maryland convictions. This is not to say certified computer records of

conviction are irrefutable. A defendant must have the opportunity to contest their accuracy. *See United States v. Booze*, 108 F.3d 378, 381 (D.C. Cir. 1997). Here, the district court afforded Carter this chance, but he declined.

For the first time on appeal, Carter points to a discrepancy between the computer record corresponding to his 1998 theft conviction and the PSR's description of the same offense. The computer record indicates a one-year sentence for this conviction, whereas the PSR lists a sentence of 60 days. Appellant's Br. at 9. Carter alleges no other inaccuracies in the records but presents this discrepancy as demonstrative evidence of their general unreliability. We are unconvinced. This single alleged inaccuracy does not introduce clear error into the district court's conclusion that these records were reliable evidence of prior convictions.[2]

Carter also attempts to discredit the certified computer records because they present certain information in a truncated format. In particular, the records do not cite the statute under which Carter was convicted. They state simply "Theft: Less $300 Value." *See, e.g.*, App. at 57. Carter suggests the omission of the statute of conviction renders these records inadequate for certain determinations under the Guidelines. Appellant's Br. at 12–13. This may be true in some cases, such as when a sentencing court may need to

---

[2]   Nor does this discrepancy create reversible error in the district court's calculation of Carter's criminal history score. Both the computer record and the PSR's account establish that Carter was convicted of theft in 1998 and received a sentence of at least 60 days. That is sufficient to support the district court's finding that Carter had a conviction resulting in a sentence of 60 days or more, *see United States v. Richardson*, 161 F.3d 728, 737–38 (D.C. Cir. 1998), which in turn supports assessing two criminal history points for this offense. *See* U.S.S.G. § 4A1.1(b).

consider the statute of conviction to determine if a prior offense is a "crime of violence" under the Guidelines. *See United States v. Andrews*, 479 F.3d 894, 897 (D.C. Cir. 2007); U.S.S.G. § 4A1.1(f) (enhancing a criminal history score for a conviction for a "crime of violence"). But when assessing criminal history points in general, a court need not know the precise statute of conviction. Identification of the offense, the length of the sentence, and the recency of the sentence are usually sufficient to assess criminal history points for a prior conviction. *See* U.S.S.G. §§ 4A1.1(a)–(c), 4A1.2(c), (e). The Maryland records provided this essential data. Indeed, Carter does not allege that the records omitted information necessary to the correct calculation of his criminal history score. That the Maryland records might lack necessary information for some other Guidelines calculation does not render them inadequate for the calculation accomplished here.

Finally, Carter argues our decision in *United States v. Price*, 409 F.3d 436 (D.C. Cir. 2005), precludes the district court's conclusion that the certified computer records of conviction were reliable. Like Carter, the defendant in *Price* challenged the sufficiency of the evidence of his prior convictions. In *Price*, the Probation Office alluded to unspecified and unproduced state court documents in support of the PSR's description of the defendant's prior convictions. The *Price* court concluded that this unadorned reference was insufficient to "demonstrate that the description in the [PSR] is based on a sufficiently reliable source to establish [its] accuracy." *Id.* at 444. In reaching this conclusion, the court suggested, "[t]his reference could be, for instance, to a docket listing, which would lack the necessary indicia of reliability for the Government to meet its burden . . . ." *Id.* at 445. From this one-sentence hypothetical, Carter creates the proposition that the certified records proffered here are unreliable. Appellant's Br. at 10.

Carter reads too much into *Price*. The *Price* court did not have before it any specific documentation supporting the alleged convictions. The court did not describe what information its hypothesized docket listing contained or whether the docket listing was an officially certified court record. Here, the sentencing court had before it certified records with information sufficient to identify the defendant and make the necessary criminal history calculation. It did not rely simply on an unadorned PSR reference to state court records; it had the records themselves. We decline to conclude the *Price* court's dictum concerning a hypothetical PSR reference to a hypothetical docket listing forecloses reliance on the certified Maryland court records proffered here.

## III.

Taking another tack in his challenge to the Maryland records, Carter argues they were insufficient to prove a prior conviction under *Shepard v. United States*, 544 U.S. 13 (2005), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). He claims these cases require the government to prove a prior conviction with a "conclusive judicial record of conviction[]" or its equivalent. Reply Br. at 9. The government maintains Carter failed to preserve this argument below and therefore we should review only for plain error. "Under plain error review, we may reverse only if: (1) there is error (2) that is plain and (3) that affects substantial rights, and (4) we find that the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Mouling*, 557 F.3d 658, 663 (D.C. Cir. 2009) (internal quotation marks and citations omitted). Carter contends we should review this question of law de novo. We need not decide which standard of review applies, because even under the more exacting de novo standard, Carter's argument fails. Neither *Shepard* nor *Apprendi* establishes a requirement that the government prove a prior conviction through only a conclusive judicial record of

conviction. Neither case involves the issue raised by the district court's reliance on the Maryland court records: the type or quantity of evidence needed to establish the fact of a prior conviction.

*Shepard* concerns how a sentencing court determines the "character" of an offense to which a defendant previously pled guilty. 544 U.S. at 16. Application of the Armed Career Criminal Act (ACCA), which imposes sentence enhancements where a defendant has prior convictions for certain predicate offenses, 18 U.S.C. § 924(e), can require a sentencing court to find facts concerning the conduct that gave rise to a defendant's prior conviction. For instance, burglary is an ACCA predicate offense with a particular definition. A state statute may define burglary more broadly than does the ACCA. In this scenario, a defendant's state burglary conviction does not necessarily qualify as a burglary under the ACCA. To determine if it does, a sentencing court would need to ascertain whether the conduct giving rise to the defendant's state conviction satisfied the elements of burglary as defined in the ACCA. *Shepard* limits the evidence a sentencing court may consider when making this factual inquiry. Specifically, "a later court determining the character of an admitted [offense] is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard*, 524 U.S. at 16. Carter argues that *Shepard*'s limits should apply more generally to any judicial determination involving a prior conviction.

*Shepard* cannot be stretched so far. It "did not address what documents can be used to prove the *fact of a prior conviction*, but was concerned only with what documents can be used to prove the *facts underlying a conviction*." *Zuniga-Chavez*, 464 F.3d at 1204. The concerns motivating the

evidentiary limitations in *Shepard*—"the unpleasant and potentially unfair specter of retrying past crimes as part of the sentencing of the instant offense," *United States v. Bridges*, 175 F.3d 1062, 1073 (D.C. Cir. 1999) (discussing *Shepard*'s progenitor *Taylor v. United States*, 495 U.S. 575 (1990))—are not present here. "Establishing the fact of a prior crime is a more discrete inquiry that is not as susceptible to the lengthy and cumbersome collateral trials of the kind the *Shepard . . .* Court[] hoped to avoid." *United States v. Bryant*, 571 F.3d 147, 154 (1st Cir. 2009). We therefore join our sister circuits in concluding that "*Shepard* does not apply when determining whether the government has satisfied its burden of proof as to the existence of a prior conviction." *United States v. Neri-Hernandes*, 504 F.3d 587, 591 (5th Cir. 2007); *see Bryant*, 571 F.3d at 154; *Zuniga-Chavez*, 464 F.3d at 1204; *United States v. Warwick*, 149 F. App'x 464, 468 n.1 (6th Cir. 2005).

Carter's attempt to find support in *Apprendi* fares no better. In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The Court exempted proof of a prior conviction from the right to a jury trial and permitted judicial determination of this particular fact because of the "procedural safeguards" attendant to the prior proceeding from which the conviction resulted. *Id.* at 488. The Court explained, "there is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find" facts never before admitted or proved in a comparable proceeding. *Id.* at 496. Carter argues that reliance on computer records lacking the "procedural safeguard" of a "signature by the sentencing

court" or its equivalent "defeats the purpose of relying on procedural safeguards to justify exempting prior convictions from the right to [a] jury trial." Appellant's Br. at 11.

*Apprendi*'s reliance on "procedural safeguards" concerns the proceeding in which a prior conviction was rendered, not the evidence used to prove the prior conviction in a subsequent sentencing. Utilizing a reliable computerized record of conviction—itself subject to adversarial testing at sentencing—to establish a prior conviction does not undermine the procedural safeguards attendant to the process by which the prior conviction was obtained. *Apprendi* is inapposite to the issue in this case.

## IV.

Carter's final argument challenging the length of his sentence is his claim that the district court erroneously imposed on him the burden of disproving his prior convictions. He contends that the district court's offer to postpone his sentencing hearing so that he could seek evidence that might rebut the government's proffer of the state court records improperly or unconstitutionally imposed on him the burden of disproving his prior convictions. Appellant's Br. at 17–20.

Carter's argument would only be valid if the evidence that the government introduced had been insufficient to sustain its burden of proof. In that case it would have been improper to place a burden on Carter to prove he was not convicted of the thefts. But here, the district court explained that the government's uncontradicted and reliable evidence was sufficient to sustain its burden of proof. This placed no improper or unconstitutional burden on Carter. A defendant at sentencing may argue that the government's evidence is insufficient without putting forward any affirmative evidence.

*See Mitchell v. United States*, 526 U.S. 314, 328-29 (1999). But that does not mean the defendant prevails if the government's evidence satisfies the applicable standard of proof, as it did here.

## V.

Because the district court did not err in concluding the certified computer records of the Maryland courts were sufficient to prove his prior convictions, we affirm Carter's sentence.

*So ordered.*