# United States Court of Appeals
## For the First Circuit

No. 17-2144

UNITED STATES OF AMERICA,

Appellee,

v.

MICHAEL VICENTE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Lynch, Stahl, and Barron,
Circuit Judges.

Mary A. Davis, on brief for appellant.
Halsey B. Frank, United States Attorney, with whom Kelly A. Archung, Special Assistant United States Attorney, on brief, for appellee.

November 20, 2018

**STAHL**, **Circuit Judge**. This is an appeal from a sentence imposed following a criminal conviction. On June 1, 2017, Appellant Michael Vicente ("Vicente") pleaded guilty to conspiracy to distribute and possess with intent to distribute oxycodone in violation of 21 U.S.C. §§ 841(a)(1) and 846. On appeal, Vicente argues that the court improperly assigned points for a prior sentence that should have been excluded as conduct that was "part of the instant offense," U.S.S.G. § 4A1.2, namely his conviction in state court for possession with intent to sell or dispense. After review, we affirm.

## I.  Factual Background and Procedural History

"Because this appeal follows a guilty plea, we draw the relevant facts from the plea agreement, the change-of-plea colloquy, the undisputed portions of the presentence investigation report ('PSR'), and the transcript of the disposition hearing." United States v. O'Brien, 870 F.3d 11, 14 (1st Cir. 2017).

In 2015, the DEA and the Somerset County (Maine) Sheriff's Office conducted an investigation into suspected drug distribution by Maine residents Warren LaPrell and Raymond Ferris. In connection with that investigation, officers executed a search warrant at the apartment of a witness ("Witness 1") on April 16, 2015, that produced oxycodone pills, firearms, and other items related to illegal drug sales. Following that search, Witness 1 identified Vicente as his source for the oxycodone. After first

meeting Vicente in Maine, Witness 1 admitted that, for approximately three years,[1] he purchased pills for illegal resale from Vicente both in Maine and in Connecticut. Witness 1 claimed that he witnessed Vicente to be in possession of, "[a]t most," 2,000 oxycodone pills in addition to the pills Witness 1 purchased from him.[2]

Two other witnesses told the government that they had traveled with Witness 1 to Connecticut on several occasions to purchase oxycodone from Vicente. One witness reported that, although he did not know the exact amount of oxycodone purchased during these trips, he heard Witness 1 talk about purchasing 500 pills and estimated that Witness 1 obtained 200 30mg pills per trip. This witness also spent $5,500 to $6,000 to buy oxycodone from Vicente and, on one occasion, Vicente returned with him and Witness 1 to Maine in possession of 1,000 pills.

On June 8, 2016, a single-count indictment in the United States District Court for the District of Maine charged Vicente with conspiracy to distribute and possess with intent to distribute oxycodone. Vicente was arrested on September 7, 2016, in Connecticut, and pleaded guilty to the sole count of the indictment

---

[1] Witness 1 subsequently revised this estimate downwards to "17 or 18 months."

[2] The DEA was unable to identify Vicente's ultimate source for the pills.

on June 1, 2017.  Following the plea, the Probation Office prepared a PSR which recommended a total offense level of 33[3] and a criminal history category of IV, resulting in a guidelines range of 188 to 235 months' imprisonment.  As relevant here, the criminal history calculation was based in part on a one-point increase for a prior conviction in Connecticut state court in 2013 (the "2013 Conviction") and a two-point increase because Vicente committed the instant offense while under probation from the 2013 Conviction.

Although it is central to this appeal, details of the 2013 Conviction are sparse.  The PSR states that Vicente was arrested on October 16, 2012, and charged in superior court in Waterbury, Connecticut with two counts: (1) possession with intent to sell/dispense; and (2) sale of a hallucinogen/narcotic.  The PSR further provides that, on July 31, 2013, Vicente received a five-year suspended sentence along with three years' probation for the first of those counts.  The PSR goes on:

> There is no further information regarding this offense at this time as the Probation Office is awaiting criminal history records from the District of Connecticut.  It is unknown if the defendant had attorney representation in this

---

[3] The level was primarily established by Vicente's admission that he sold between 200 and 400 30 mg oxycodone pills per week for 17 to 18 months which, once converted to its marijuana equivalent, translated to a base offense level of 30.  The PSR recommended four-point and two-point enhancements, respectively, for acting as an organizer or leader of the conspiracy and engaging in the conduct as a livelihood, and a three-point reduction for acceptance of responsibility, resulting in a total offense level of 33.

matter. The defendant was also charged with the Sale of Hallucinogen/Narcotic but had this count <u>Nolle</u> <u>Prossed</u>.

During sentencing, the district court inquired about the 2013 Conviction. Vicente stated:

It was kind of a weird case because we had the prescriptions -- I was pulled over with Matthew Summa,[4] we had the prescriptions [] that were prescribed to us in the vehicle, they found it in between the seats and the bottle was broken, but the name on the prescriptions was the prescription that belonged to us. So it wasn't like making a sale with it.

During the sentencing hearing, the district court also made mention of the 2013 Conviction when discussing the fact that Vicente began taking part in the instant offense before he was sentenced for his Connecticut crime and continued while on probation from that crime. There was no discussion by either party of the legal basis for characterizing the 2013 Conviction as a "prior sentence" under the sentencing guidelines.

At sentencing, neither party objected to the criminal history calculation.[5] The district court imposed a guidelines

---

[4] Summa was not named as a co-conspirator or accomplice in the present case.

[5] At the parties' urging, the court did not impose enhancements for either Vicente's role in the criminal activity under Section 3B1.1(a) or for engaging in the criminal conduct as a livelihood under Section 2D1.1(b)(5)(E), both of which were proposed by the PSR. This resulted in an offense level of 27 and, when combined with Vicente's criminal history category, a guidelines range of 100 to 125 months' incarceration.

sentence of 100 months' incarceration. This timely appeal followed.

## II. Discussion

The sole issue raised by this appeal is whether the district court erred in concluding that the 2013 Conviction constitutes a "prior sentence" under Section 4A1.2 of the Sentencing Guidelines. Vicente contends that the conduct underlying that conviction was "part of the instant offense," and so is not a qualifying prior sentence, because his conduct of possessing prescription drugs with intent to sell and his base of operations (i.e. Waterbury, Connecticut) align with the present charge. He further asserts that his purpose and modus operandi —— to obtain prescription drugs and sell them for profit —— was the same.

There is no dispute that Vicente failed to raise this point below, and so our review is for plain error. See United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015). To prevail under this rigorous standard, an appellant must establish "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). As to the third prong of this analysis, "[w]hen a defendant is sentenced under an incorrect Guidelines

- 6 -

range . . . the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error."  Molina-Martinez v. United States, __ U.S. __, 136 S. Ct. 1338, 1345 (2016).

Section 4A1.1 of the Federal Sentencing Guidelines Manual dictates the allocation of criminal history points to a defendant, the sum of which determines the defendant's criminal history category.  Points are added for, inter alia, "prior sentence[s]," defined in relevant part as "any sentence previously imposed . . . for conduct not part of the instant offense."[6] U.S.S.G. § 4A1.2(a)(1) (emphasis added).  The Sentencing Guidelines define conduct that is "part of the instant offense" as "conduct that is relevant conduct to the instant offense under the provisions of [Section] 1B1.3 (Relevant Conduct)."  Id. § 4A1.2 cmt. n.1.

Section 1B1.3, in turn, contains multiple subsections defining relevant conduct.  Most pertinent here, as to certain offenses,[7] relevant conduct includes "all acts and omissions . . .

---

[6] As relevant here, the application notes to that section indicate that "a sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense, is a prior sentence if it was for conduct other than conduct that was part of the instant offense."  Id. § 4A1.2 cmt. n.1.

[7] Section 1B1.3(a)(2) applies to offenses "of a character for which [Section] 3D1.2(d) would require grouping of multiple counts."  U.S.S.G. § 1B1.3(a)(2). Under Section 3D1.2(d), multiple counts should be "grouped," or aggregated for purposes of

that were part of the same course of conduct or common scheme or plan as the offense of conviction."[8]  Id. § 1B1.3(a)(2).  In elaborating on the criteria for finding that multiple offenses constitute a common scheme or plan, the guidelines explain that the offenses must "be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi."  Id.

---

determining offense conduct, when the offense level for those counts is "determined largely" based on, inter alia, "the quantity of a substance involved." Id. § 3D1.2(d). That section explicitly includes drug offenses.  See id.; see also United States v. Gerante, 891 F.2d 364, 369 (1st Cir. 1989). Vicente claims that the offenses here require grouping, and the government does not contest the point.

[8]  Vicente also argues that another section, Section 1B1.3(a)(1)(A) ("[A]ll acts and omissions committed . . . or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction . . . ."), separately applies to his case.  However, the plain language of Section 1B1.3(a)(2) indicates that where the instant offense requires grouping of multiple counts, the analysis of conduct described in Section 1B1.3(a)(1) is collapsed into Section 1B1.3(a)(2). U.S.S.G. § 1B1.3(a)(2) (stating that the relevant conduct defined by that section includes "all acts and omissions described in subdivision[] (1)(A) . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction"); see also United States v. Kulick, 629 F.3d 165, 170 (3rd Cir. 2010) ("[I]f both sections could apply to the facts of a case, we must apply Section (a)(2)."); but cf. United States v. Hodge, 805 F.3d 675, 682 (6th Cir. 2015) (finding conduct to be relevant under both subsections (a)(1) and (a)(2)).  Even if the court were to separately analyze the 2013 Conviction under Section 1B1.3(a)(1)(A), however, there would be no evident basis to conclude that the offense underlying that conviction "occurred during the commission of the offense of conviction," as it predates the charged conspiracy by nearly eight months.

- 8 -

§ 1B1.3(a)(2) cmt. n.5(B)(i).  Further, as described by the Sentencing Guidelines,

> [o]ffenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses.  Factors that are appropriate to [that] determination . . . include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses.  When one of the above factors is absent, a stronger presence of at least one of the other factors is required.

Id. § 1B1.3 cmt. n.5(B)(ii).

"[T]he term 'same course of conduct' is analytically distinct from the term 'common scheme or plan.'" United States v. Bryant, 571 F.3d 147, 160 n.13 (1st Cir. 2009).  The former concept focuses on "whether the defendant repeats the same type of criminal activity over time."  Id. (quoting United States v. Adams, 303 F. App'x 926, 927 (2d Cir. 2008) (unpublished)).  The "common scheme or plan" prong, on the other hand, looks to whether the "acts [are] 'connected together' by common participants or by an overall scheme."  United States v. Sanders, 982 F.2d 4, 9 (1st Cir. 1992) (quoting United States v. Perdomo, 927 F.2d 111, 115 (2d Cir. 1991)).

Assessment of whether either of these prongs is met "is necessarily a fact-specific inquiry that involves more than just

- 9 -

a consideration of the elements of the two offenses. Factors such as the temporal and geographical proximity of the two offenses, common victims, and a common criminal plan or intent also must be considered." United States v. Collazo-Aponte, 216 F.3d 163, 203 (1st Cir. 2000), vacated on other grounds, Collazo-Aponte v. United States, 532 U.S. 1036 (2001) (internal quotation marks omitted). In conducting this inquiry, we are mindful of the "important limiting principle that not every drug transaction undertaken by every drug trafficker is necessarily linked in a meaningful sense." Bryant, 571 F.3d at 160 (internal quotation marks omitted).

The record here provides insufficient reason to conclude that the 2013 Conviction satisfies either prong of Section 1B1.3(a)(2). The few facts that may be gleaned from the PSR indicate only that Vicente was arrested while in possession of prescription medications in Connecticut with an individual not named as a co-conspirator in the instant case. This obviously differs from the "scheme or plan" at issue in the present charge, which involved a large scale interstate trafficking conspiracy to move drugs from Connecticut to Maine, and we can discern no "substantial connection" between the crimes on those facts. See U.S.S.G. § 1B1.3 cmt. n.5(B)(i) ("For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common

purpose, or similar modus operandi.").  The factual distinctions between those crimes also undercut any suggestion that they are part of the same course of conduct.  The varying quantities in the two charges in particular underscores the difference, as the record indicates that the quantity of pills found in between his car seats in 2012 (a "bottle," in Vicente's account) pales in comparison to the amount of pills possessed by Vicente throughout the instant offense, which evidently numbered in the thousands.  Moreover, Vicente himself distinguished the conduct underlying the 2013 Conviction from the distribution scheme charged here, stating that it "wasn't like making a sale with [the pills]."  From this, we cannot see how the record supports a finding that the crimes were part of a "single course of conduct, scheme, or plan," United States v. Sklar, 920 F.2d 107, 111 (1st Cir. 1990); indeed, the available facts seem to us to point in just the opposite direction.

Vicente asserts additional facts in his brief, including claims that the drugs in question were the same as those in this case, came from the same source, and were meant for distribution. He points to no support for these allegations and so they cannot be meaningfully evaluated for veracity or relation to the offense of conviction.  Even taken as true, however, the additional, completely unsupported facts advanced by Vicente in his brief are insufficient to show error, let alone plain error, in the district court's determination that the state offense was not relevant to

the federal conspiracy.  Accordingly, we find no error and thus no basis to conclude that the district court erred in treating the 2013 Conviction as a prior sentence for purposes of determining Vicente's criminal history category.[9]

### III.  Conclusion

For the foregoing reasons, we AFFIRM the sentence imposed on the appellant.

---

[9] Vicente also challenges the addition of two points under Section 4A1.1(d) for committing the offense while under a criminal justice sentence, namely the probation resulting from the 2013 Conviction.  This challenge fails for the reasons set forth above. The Guidelines define "a 'criminal justice sentence' [as] a sentence countable under § 4A1.2 . . . ."  U.S.S.G. § 4A1.1 cmt. n.4.  Because the 2013 Conviction was properly considered under Section 4A1.2, the imposition of two points for committing the crime while under a "criminal justice sentence" pursuant to Section 4A1.1(d) was also proper.